## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JAMES E. WOOD, individually and on behalf of
others similarly situated,

        Plaintiff,

Case No. 8:14-CV-03044-MSS-AEP

vs.

PORTFOLIO RECOVERY ASSOCIATES,
LLC,

        Defendant.

_____ /

## DEFENDANT'S NOTICE OF FILING DOCUMENTS PURSUANT TO THE COURT'S ORDER DATED MARCH 2, 2015 [DE 23]

Defendant, Portfolio Recovery Associates, LLC, by and through its undersigned counsel and in accordance with the Federal Rules of Civil Procedure and this Court's Order of March 2, 2015 [DE 23], hereby submits the following documents to the Court evidencing Defendant's assignment of all of Comenity Bank's rights in the agreement with Plaintiff:

1.      Affidavit of Comenity Bank dated March 2, 2015 with the Terms and Conditions that were referenced in Defendant's Motion to Stay Proceedings, Compel Arbitration, and Dismiss Class Action Claims [DE 10] attached.

2.      Bill of Sale between Comenity Bank and Portfolio Recovery Associates, LLC together with a redacted portion of Exhibit 1 to the Bill of Sale showing a transfer of Plaintiff's account.

3.      Defendant also maintains in its business records a Credit Card Account Purchase Agreement between Comenity Bank and Portfolio Recovery Associates, LLC that is referenced in the Bill of Sale. Defendant could not produce this document within the time required by the Court and if the Court wishes to review this document prior to making a determination of the

issues relating to Portfolio Recovery Associates, LLC's status of an assignee of account, then Defendant would request an extension of time to permit Defendant to obtain the document from its archives, provide any required notices and redact any required trade secret or the confidential information from the agreement prior to filing.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on March 4, 2015 the foregoing was electronically filed with the Clerk of Court using the ECF electronic filing system which electronically notifies the following:

> James L. Davidson, Esq.
> Greenwald Davidson, PLLC
> 5550 Glades Road, Suite 500
> Boca Raton, FL 33431
> jdavidson@mgjdlaw.com

> *s/Robert E. Sickles*
> Robert E. Sickles
> Florida Bar No. 167444
> rsickles@hinshawlaw.com
> John P. Gaset
> Florida Bar No. 98415
> jgaset@hinshawlaw.com
> **HINSHAW & CULBERTSON LLP**
> 100 South Ashley Drive, Suite 500
> Tampa, FL 33602-5301
> Telephone: (813) 276-1662
> Facsimile: (813) 276-1956
> *Attorneys for Defendant*

DOCUMENT 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES E. WOOD,

       Plaintiff,

v.                                     8:14-cv-03044-MSS-AEP

PORTFOLIO RECOVERY
ASSOCIATES, LLC,

       Defendant.

## AFFIDAVIT OF COMENITY BANK

BEFORE ME the undersigned Notary Public in and for the State of Ohio appeared Travis Snead, who stated under oath as follows:

1.      My name is Travis Snead, I am employed by Comenity Servicing, LLC, as its Agency Department Manager, and make this affidavit as an authorized agent of and on behalf of Comenity Bank, formerly known as World Financial Network Bank.

2.      I make this affidavit under oath based on my personal knowledge and/or a review of the business records maintained by Comenity Bank in the ordinary course of its business.

3.      On December 27, 2013, Comenity Bank sold to Portfolio Recovery Associates, LLC ("PRA") account number xxx-xxx-595 in the name of James E. Wood.

4.      The terms and conditions attached hereto are the terms and conditions that went into effect in October 2009 for the referenced James E. Wood account.

5.      Further affiant sayeth not.

Comenity Bank
By: Travis Snead
Its:  Agency Department Manager


The foregoing instrument was acknowledged before me this 2nd day of March, 2015 by [name and title] of Comenity Servicing, LLC, authorized agent of Comenity Bank [or Comenity Capital Bank], on behalf of said Bank.

_____, Notary Public

Reg. No. _____

My commission expires: _____

Michele R. Mason
Notary Public, State of Ohio
My Commission Expires 07-07-2018



818121008 (10/09)

| Interest Rates and Interest Charges | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | **24.99%.** This APR will vary with the market based on the Prime Rate. |
| Paying Interest | Your due date is 25 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than $1.00. |
| For Credit Card Tips from the Federal Reserve Board | To learn more about factors to consider when applying for or using a credit card, visit the website of the Federal Reserve Board at http://www.federalreserve.gov/creditcard. |

(except for Waive Interest, Equal Payment and Defer Interest, Equal Payment) will be the greater of: (a) $10.00; or (b) 5% (rounded down to the nearest $5.00) of the New Balance shown on your Statement for that Credit Plan. The minimum payment for the Waive Interest, Equal Payment and Defer Interest, Equal Payment Credit Plans will be the amount of the purchase divided by the number of months between the date of the purchase and promotional period end date (minimum $10.00) rounded up to the nearest whole dollar. If your Account balance is less than $10.00, you must pay your Account balance. Your Statement will tell you how much your Minimum Payment must be.

**12. APPLICATION OF PAYMENTS.** We will apply amounts paid in excess of the minimum payment due first to the balance bearing the highest rate of interest, and then to each successive balance bearing the next highest rate of interest, until the payment is exhausted. However, we will allocate the entire amount paid in excess of the minimum payment due to any balance on which interest is deferred during the last 2 billing cycles immediately preceding the expiration of the promotion period.

**13. STATEMENTS; BILLING PERIODS.** If your Account has a balance, we will send you a Statement at the end of each Billing Period. We send only one Statement for your Account. The Statement will show your: Statement Closing Date, Previous Balance, Payments and Credits, Charges, Finance Charge, Payment Due Date, New Balance and Minimum Payment. Billing Period means the days between the closing date shown on the last Statement we sent you and the closing date on your current Statement. We may change your Billing Period as permitted by law at any time for our own convenience.

**14. FINANCE CHARGES.**

**A.** If you make a purchase under a Regular Revolving Credit Plan, no Finance Charges will be imposed in any Billing Period in which (i) there is

| | |
|---|---|
| Reserve Board | http://www.federalreserve.gov/creditcard. |

| Fees | |
|---|---|
| **Set up and Maintenance Fees** | |
| • Annual Fee | None |
| • Processing Fee | You will be charged **$1.00** for each paper monthly billing statement mailed to you. You will not be charged this fee if you have registered for online access to your account and have agreed to receive your monthly billing statement solely electronically via e-statements. |
| **Penalty Fees** | |
| • Late Payment | $20 if balance is equal to or less than $249.99; $25 if balance is equal to or greater |

own convenience.

**14. FINANCE CHARGES.**

**A.** If you make a purchase under a Regular Revolving Credit Plan, no Finance Charges will be imposed in any Billing Period in which (i) there is no Previous Balance or (ii) payments received and credits issued by the Payment Due Date, which is 25 days after the Statement Closing Date shown on your last Statement, equal or exceed the Previous Balance. If the New Balance shown on your last Statement is not satisfied in full by the Payment Due Date shown on your last Statement, there will be a Finance Charge on each purchase from the date of purchase.

**B.** If you make a purchase under any of the following Promotional Credit Plans: Waive Interest, Payment Required; Waive Interest, Equal Payment and Waive Interest, Defer Payment, we will not charge Finance Charges on the purchase if you pay the total amount of the purchase before the end of the promotional period. If you do not pay the total amount of the purchase before the end of the promotional period, we will add the amount of the purchase to your Regular Revolving balance and will begin to charge Finance Charges on the purchase from the first day after the promotional period ends. For any Waive Interest Plan that ends due to one of the reasons listed in Section 6, we will add the remaining amount of the plan to your Regular Revolving balance and will begin to charge Finance Charges.

If you make a purchase under a Defer Interest, Payment Required; Defer Interest, Equal Payment or Defer Interest and Payment Credit Plan, we will add the amount of Finance Charges that have accrued from the date of purchase through and including the last day of the promotional period to your Regular Revolving balance if you do not pay the total amount of the purchase before the end of the promotional period. For any Defer Interest Plan that ends due to one of the reasons listed in Section 6, we will add the remaining amount of the plan and the amount of Finance Charges that have accrued from the date of purchase through and including the last day of the promotional period to your Regular Revolving balance.

**C.** We figure Finance Charges on your Account separately for each Credit

| | |
|---|---|
| • Late Payment | **$20** if balance is equal to or less than $249.99;<br><br>**$25** if balance is equal to or greater than $250.00 |
| • Returned Payment | **$25** |

**How We Will Calculate Your Balance:** We use a method called "average daily balance (including new purchases)."

**Billing Rights:** Information on your rights to dispute transactions and how to exercise those rights is provided in your account agreement.

### WORLD FINANCIAL NETWORK NATIONAL BANK CREDIT CARD AGREEMENT

This is your Agreement with World Financial Network National Bank for customers of Express. It covers the use of your credit card account with us. This Agreement may include information about promotional Credit Plans. Any information about such Plans will be included in the form of an insert, attachment, or other written information provided as part of or with this Agreement. Please read this Agreement and keep it for your records.

THIS AGREEMENT INCLUDES A JURY TRIAL WAIVER IN PARAGRAPH 30 A. AND AN ARBITRATION PROVISION IN PARAGRAPH 30.C. IN THE EVENT OF A DISPUTE BETWEEN YOU AND US: (1) THE JURY TRIAL WAIVER WILL ELIMINATE THE RIGHT TO A TRIAL BY JURY: AND (2) UNLESS YOU ACT PROMPTLY TO REJECT IT, THE

have accrued from the date of purchase through and including the last day of the promotional period to your Regular Revolving balance.

C. We figure Finance Charges on your Account separately for each Credit Plan. For each Billing Period, we use a "Daily Balance" to figure Finance Charges on your Account. This is how we figure the "Daily Balance" each day:

1. We start with the beginning balance on your Account each day (including unpaid Finance Charges and fees).

2. We subtract any payments or credit adjustments and add any new purchases and debit adjustments posted as of that day. This gives us the "Partial Daily Balance" for the day.

3. We then multiply the Partial Daily Balance for the day by the Daily Periodic Rate of Finance Charge to obtain the "Daily Finance Charge" for the day and add it to the day's Partial Daily Balance. This gives us the "Daily Balance", which will be the beginning balance for the following day.

At the end of each Billing Period, we add together each Credit Plan's Daily Finance Charge for each day in the Billing Period to get the total Account Finance Charge for the Billing Period.

Your Statement will show an Average Daily Balance, which is the sum of the Partial Daily Balance for each day in the Billing Period divided by the number of days in the Billing Period.

D. The Daily Periodic Rate of **FINANCE CHARGE** applicable to your Account will be computed by adding 21.74% to the value of an "Index," and dividing by 365 (The corresponding **ANNUAL PERCENTAGE RATE** will be the Index plus 21.74%). The Index in effect for each Billing Period shall be the highest "Prime Rate" of interest as published in the "Money Rates" section of *The Wall Street Journal* for the calendar month preceding the month in which the Billing Period begins, rounded upward, if necessary, to the nearest .001% ("Index"). The corresponding **ANNUAL PERCENTAGE RATE** will not decrease below 24.99% nor increase above 24.99%. An increase or decrease in the Annual Percentage Rate will result in a corresponding increase or decrease in the amount of Finance Charge.

THIS AGREEMENT INCLUDES A JURY TRIAL WAIVER IN PARA-GRAPH 30 A.  AND AN ARBITRATION PROVISION IN PARAGRAPH 30.C. IN THE EVENT OF A DISPUTE BETWEEN YOU AND US: (1) THE JURY TRIAL WAIVER WILL ELIMINATE THE RIGHT TO A TRIAL BY JURY; AND (2) UNLESS YOU ACT PROMPTLY TO REJECT IT, THE ARBITRATION PROVISION WILL SUBSTANTIALLY AFFECT YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING, JOIN IN OR PARTICI-PATE IN CLASS PROCEEDINGS.

1. DEFINITIONS. In this Agreement, "We," "Us," and "Our" mean World Financial Network National Bank. "You" and "Your" mean each person who signs an application for, or otherwise requests, a credit card account with us. "Account" means your credit card account with us. "Card" means each credit card we issue to you for your Account.  "Credit Plan" means one or more payment program options that Express may ask us to offer from time to time. You agree that at any time for any reason we may reis-sue a Card to you and/or may ask you to return any or all Cards.

2. YOUR PROMISE TO US.

A. You agree to the terms of this Agreement. You promise to do everything this Agreement requires of you. You will be legally bound by this Agreement if you sign an application to obtain credit from us, or if you sign a charge slip, or if you use or permit someone else to use the credit pro-vided.

B. If the Account is a joint Account, you and the joint Account holder each will be bound by this Agreement and each of you will be jointly and indi-vidually responsible for repaying all amounts due under this Agreement.

C. Any authorized user of your Account will, by such use of the Account, be bound by the terms of this Agreement.  If you want to cancel the authorized or permitted use of your Account by another person, you may either write us at the address or call us at the telephone number shown on your Statement. You must obtain, cut in half and return the Card in such authorized users possession to us.  You understand and agree that we will be unable to determine whether any particular transaction on your Account has been conducted by you, your joint Account holder or the authorized user or if the transaction by the authorized user was indeed authorized by you or made for your benefit.  You agree to pay for all trans-actions made on your Account by an authorized user whether or not such transactions were in fact duly authorized by you or made for your benefit.

CENTAGE RATE will not decrease below 24.99% nor increase above 24.99%.  An increase or decrease in the Annual Percentage Rate will result in a corresponding increase or decrease in the amount of Finance Charge.

Effective July 1, 2010.  The 24.99% maximum Annual Percentage Rate will be removed from your account.  This means that the Annual Percentage Rate on your account can increase above 24.99%, upon an increase in the Prime Rate.

E. We will charge  you a minimum FINANCE CHARGE of $1.00 for any Billing Period in which a Finance Charge is due.

F. Your monthly statement will disclose the applicable Annual Percentage Rate for the Billing Period.  If this Agreement accompanies credit cards for your new account, the current initial Daily Periodic Rate of FINANCE CHARGE and corresponding ANNUAL PERCENTAGE RATE are indicat-ed on the Cardmailer and are incorporated herein by reference.  As of October 1, 2009 the initial Daily Periodic Rate of FINANCE CHARGE, was 0.06846%, and the corresponding initial ANNUAL PERCENTAGE RATE was 24.99%. This information may have changed after that date. To find out about changes in the information, call us at 1-800-888-5529 (TDD/TTY 1-800-695-1788) or write us at World Financial Network National Bank, PO Box 182273, Columbus, OH 43218-2273.

15. OTHER FEES AND CHARGES. You agree to pay (as interest) the fol-lowing fees and charges:

A. Late Fee. If you do not pay us at least the Minimum Payment Due for each Billing Period or you pay it late, we can add a late fee to your Account. If the Balance shown on your Statement is equal to or less than $249.99 we will charge a late fee of $20.00 to your account. If the Balance shown on your Statement is equal to or greater than $250.00 we will charge a $25.00 late fee to your account. Your payment will be late if we do not receive it by the payment Due Date shown on your Statement.

B. Returned Check Fee. We can charge you $25.00 each and every time a bank returns any check to us for any reason. Although we may, we do not have to attempt to collect any check more than once.

C. Document Fee. If a copy of any Statement, sales draft or similar doc-

transactions were in fact duly authorized by you or made for your benefit.

**D.** If you fail to comply with any of the terms of this Agreement, we may declare all amounts you owe to be immediately due and payable, prohibit further transactions on your Account, cancel the Cards, and revoke any privileges associated with the Card or your Account.

**3. SIGN THE CARD.** For your own protection, please sign the Card before using it. Your signature on the Card is not a prerequisite to your obligation to pay amounts incurred on your Account.

**4. METHOD OF PAYMENT.** You may pay your Account by sending your personal check, payable in U.S. dollars, to the name and address shown on your Statement. Payments are considered received when posted to your Account in the state in which the WFNNB main office is located. You must include your payment stub. Do not send cash. If any payment does not conform to these requirements, the payment may not be credited to your Account for up to five days, or may be rejected. Any check marked "payment in full" or with similar terms must be sent to a separate address specified on your Statement. We can accept such checks or late or partial payments without losing our right to receive the full amount owing on your Account.

**5. LOST OR STOLEN CARD.** If a Card is lost or stolen, you must tell us at once. You must also tell us at once if you think someone used a Card without your permission. You may either write us a letter or call us at the address and phone number shown on your Statement. Until you do, you may have to pay (up to $50.00) for purchases made by anyone who used the Card without your permission.

**6. CREDIT PLANS.** Your Account may consist of a non-promotional Credit Plan and one or more promotional Credit Plans. We may offer different promotional Credit Plans from time to time. If a promotional Credit Plan is

**C. Document Fee.** If a copy of any Statement, sales draft or similar document is provided by us at your request (except in connection with billing error inquiries or resolution), we may charge the Account the following fee(s):

- Statement copy - $6.00
- Sales/Credit Draft copy - $6.00
- Check/Money Order copy - $6.00

**D. Alternative Payment Method Fee.** We may offer alternative payment methods which would allow you to make individual, expedited payments to your Account over the telephone or through the internet. If you choose to use one of those payment methods, then we may assess the then current fee that we charge for this service. At present, that fee is up to $15.00, but it may change. We will disclose the current fee to you (you may withdraw your request if you do not want to pay the fee) before you authorize any payment(s) through either of these alternative methods.

**E. Processing fee.** You will be charged $1.00 for each paper monthly billing statement mailed to you. You will not be charged this fee if you have registered for online access to your account and have agreed to receive your monthly billing statement solely electronically via e-statements.

**16. IMMEDIATE PAYMENT.** We may tell you to pay the full amount you owe at once if you do not pay at least the Minimum Payment each time you receive a Statement. We will tell you in advance and/or give you an opportunity to cure your default only if applicable law requires us to do so.

**17. ATTORNEY FEES AND COLLECTION COSTS.** If you do not comply with your obligations under this Agreement, you agree to pay the reasonable attorneys' fees, expenses and court costs we incur in order to collect your Account or protect our rights.

the Card without your permission.

**6. CREDIT PLANS.** Your Account may consist of a non-promotional Credit Plan and one or more promotional Credit Plans. We may offer different promotional Credit Plans from time to time. If a promotional Credit Plan is offered at the time you open your account, this Agreement will include information about the terms for the Plan (which may include the Daily Periodic Rate, the ANNUAL PERCENTAGE RATE, and/or the minimum payment amount), by use of an insert, attachment, or other written information provided as part of or with this Agreement. Normal late payment charges, returned check charges and all other provisions apply to any promotional Credit Plan unless inconsistent with a particular Credit Plan offering. The promotional Credit Plan period will end and the promotional Credit Plan balance will be transferred to your non-promotional Regular Revolving balance if any of the following occurs:

1) The promotional Credit Plan purchase is not paid in full before the promotional period ends;

2) For any Plan in which payments are required, if you fail to pay, when required, two consecutive Regular Revolving and /or required promotional plan payments;

3) For any Plan in which payments are not required, if you fail to pay, when due, three consecutive Regular Revolving payments and / or required promotional plan payments;

4) You do not comply with the terms of this Agreement.

The types of Credit Plans offered and the particular features (including but not limited to minimum purchase requirements, Minimum Payment, etc.) of such Credit Plans may vary from time to time at our discretion and may include one or more of the following: **Regular Revolving** or **Promotional Credit Plans.** The **Regular Revolving Credit Plans** are your non-promotional purchases using the Card. The **Promotional Credit Plans** may include: **Waive Interest, Payment Required; Waive Interest, Equal Payment; Waive Interest, Defer Payment; Defer Interest and Payment; Defer Interest, Equal Payment; Defer Interest, Payment Required.** (Please see section 14 for explanation for how Finance Charges are calculated for each Plan.)

**7. SKIP-PAYMENT OPTION.** At our sole option, we may allow you to skip making the Minimum Payment on certain Billing Periods. During the skip-payment period Finance Charges will be assessed but no late fee will be imposed. At the end of the skip-payment period, all terms of this Agreement that would have applied, were it not for the skip-payment feature, will automatically resume without notice.

**8. CREDIT LIMIT.** Your Credit Limit is the total maximum amount we allow you to owe us at any time. You may not exceed any credit limit that we set for your Account. If you do use the Account for more than your Credit

**17. ATTORNEY FEES AND COLLECTION COSTS.** If you do not comply with your obligations under this Agreement, you agree to pay the reasonable attorneys' fees, expenses and court costs we incur in order to collect your Account or protect our rights.

**18. CHANGES.** We may add, change or delete the terms of your Account (including, but not limited to, Annual Percentage Rate and other significant changes). If notice is required, it will be mailed to you at least forty-five (45) days prior to the effective date of the change. Notice may also include a statement of your right to cancel the account prior to the effective date of the change.

**19. SECURITY INTEREST.** You grant us a security interest in all goods that you purchase through the use of the Account now or at any time in the future and in all accessions to and proceeds of such goods. We hereby waive any security interest we may have in your principal dwelling to the extent that it would otherwise secure any obligation arising hereunder.

**20. GOVERNING LAW.** This Agreement is governed by laws of the state in which the WFNNB main office is located, and applicable federal law. This is the law we are speaking of when we refer to a term permitted or required by applicable law.

**21. TRANSFER OF RIGHTS/ASSIGNMENT.** Your rights under this Agreement cannot be transferred by you, by operation of law, or otherwise, but your obligations shall be binding upon your estate or personal representatives. We may transfer or assign your Account and/or this Agreement, or any of our rights under this Agreement, to another person or entity at any time without prior notice to you or your consent.

**22. NO WAIVER OF RIGHTS.** We can delay enforcing our rights under this Agreement without losing them.

**23. SEVERABILITY.** If any provision of this Agreement is in conflict with applicable law, that provision will be considered to be modified to conform with applicable law.

**24. CREDIT REPORTS.** You hereby authorize us to investigate your credit record. You agree that a credit report may be requested in connection with the processing of an application for credit, and subsequently in connection with any extension of credit, or any request to increase your credit limit, or any renewal or update of your Account, or to take collection action on the Account, or to investigate disputes regarding the Account. If you ask, we will tell you if credit reports were requested, and the name and address of any credit bureaus that provided the reports. You understand that we may report negative information about your account to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You hereby authorize us to furnish information concerning your Account to credit bureaus and other creditors, as well as to the retailer whose name appears on your Card.

ture, will automatically resume without notice.

**8. CREDIT LIMIT.** Your Credit Limit is the total maximum amount we allow you to owe us at any time. You may not exceed any credit limit that we set for your Account. If you do use the Account for more than your Credit Limit, we can still charge you for all purchases, Finance Charges and other charges without giving up any of our rights under this Agreement. We may change your Credit Limit at any time.

**9. HOW TO CANCEL YOUR ACCOUNT.** You may cancel your Account at any time. Cut each Card in half and send us the pieces with a letter telling us you want to cancel your Account. This includes each Card you gave to others. You still must pay the full amount you owe us.

**10. WE HAVE THE RIGHT TO CANCEL YOUR ACCOUNT.** We may cancel your Account at any time for any reason. We also may cancel any of the Credit Plans at any time for any reason. Any Card issued for your Account must be cut in half and the pieces sent to us if we ask. This includes each Card you gave to others. **You cannot use a Card after we ask you to return it.** You still must pay the full amount you owe us and comply with the terms of this Agreement.

**11. PAYMENTS; MINIMUM PAYMENT. You may pay all of your Account balance at any time without penalty.** You must pay us at least the Minimum Payment Due for each Billing Period by the Payment Due Date shown on your Statement. The Minimum Payment will be the total of the minimum payments for the Regular Revolving and Promotional Credit Plans (as described above in Section 6), plus any past due amounts and fees. The minimum payments for the Regular Revolving Credit Plan and the Promotional Credit Plans that require a payment

bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. You hereby authorize us to furnish information concerning your Account to credit bureaus and other creditors, as well as to the retailer whose name appears on your Card.

**25. CREDIT INSURANCE (as applicable).** Credit insurance is not required. If you have been accepted for credit insurance coverage, the premium charge will be added to your Account as a purchase on the last day of each Billing Period.

**26. DEBT CANCELLATION (as applicable).** Your Purchase of Account Assure is optional. Whether or not you purchase Account Assure will not affect your application for credit or the terms of any existing credit agreement you have with World Financial Network National Bank. The monthly fee for Account Assure is based on the outstanding monthly balance on your account each month and will be added to your account statement. We will give you additional information before you are required to pay for Account Assure. This information will include a copy of the contract containing the terms and conditions governing Account Assure. There are eligibility requirements, conditions, and exclusions that could prevent you from receiving benefits under Account Assure. You should carefully read the contract for a full explanation of the terms of Account Assure.

**27. COMMUNICATION REGARDING ACCOUNT.** You authorize us to contact you by telephone regarding your Account. You agree that such telephone calls may be automatically dialed and that a recorded message may be played. You agree that such telephone calls are not unsolicited telephone calls for purposes of any state or federal law.

**28. TELEPHONE MONITORING.** As part of our continuing effort to maintain a high quality of service to our customers, telephone communications with you may be monitored and recorded. You agree that monitoring and/or recording may be done and that no additional notice to you or additional approval from you is needed. Please inform all persons authorized to use this account, those acting on your behalf, or anyone making payments on this account, of this provision.

**29. CUSTOMER CHANGES.** You must tell us at once if you change your name, address or employment.

**30. DISPUTE RESOLUTION PROVISIONS.**

**A. Jury Trial Waiver.** TO THE EXTENT PERMITTED BY LAW, YOU AND WE WAIVE ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF A LAWSUIT ARISING OUT OF OR RELATED TO THIS AGREEMENT. THIS JURY TRIAL WAIVER SHALL NOT AFFECT THE ARBITRATION PROVISION BELOW (INCLUDING THE JURY TRIAL WAIVER CONTAINED THEREIN). YOU AND WE EACH REPRESENT THAT THIS WAIVER IS GIVEN KNOWINGLY, WILLINGLY AND VOLUNTARILY.

**B. Notice and Cure.** Prior to bringing a lawsuit or initiating an arbitration that asserts a claim arising out of or related to this Agreement (as further defined below, a "Claim"), the party asserting the Claim (the "Claimant") shall give the other party (the "Defendant") written notice of the Claim (a "Claim Notice") and a reasonable opportunity, not less than 30 days, to resolve the Claim. Any Claim Notice to you shall be sent in writing to the address we have in our records (or any updated address you subsequently provide to us). Any Claim Notice to us shall be sent by mail to World Financial Network National Bank, PO Box 182436, Columbus, OH 43218-2436 (or any updated address we subsequently provide). Any Claim

**NOTICE OF REPORTING ERRORS**

If you believe the Account information being reported to a consumer reporting agency is inaccurate, you may write to us at the **Billing Errors** address below. Please specify in your letter the information that you believe is inaccurate.

**YOUR BILLING RIGHTS; KEEP THIS NOTICE FOR FUTURE USE**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions about Your Bill.** If you think your bill (Statement) is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at World Financial Network National Bank, PO Box 182782, Columbus, OH 43218-2782. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• Your name and Account Number.

• The dollar amount of the suspected error.

• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities after We Receive Your Written Notice.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

resolve the Claim. Any Claim Notice to you shall be sent in writing to the address we have in our records (or any updated address you subsequently provide to us). Any Claim Notice to us shall be sent by mail to World Financial Network National Bank, PO Box 182436, Columbus, OH 43218-2436 (or any updated address we subsequently provide). Any Claim Notice you send must provide your name, address and account number. Any Claim Notice must explain the nature of the Claim and the relief that is demanded. You may only submit a Claim Notice on your own behalf and not on behalf of any other party. No third party, other than a lawyer you have personally retained, may submit a Claim Notice on your behalf. The Claimant must reasonably cooperate in providing any information about the Claim that the other party reasonably requests.

C. Arbitration Provision. READ THIS ARBITRATION PROVISION CAREFULLY. IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH 30.C.1. BELOW, IT WILL BE PART OF THIS AGREEMENT AND WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.

1. Your Right to Reject: If you don't want this Arbitration Provision (and any prior arbitration agreement between you and us ("Prior Arbitration Agreement")) to apply, you may reject it by mailing us a written rejection notice which gives the name of each Cardholder and contains a statement that you (both of you, if more than one) reject the Arbitration Provision of this Agreement. The rejection notice must be sent to us at World Financial Network National Bank, PO Box 182422, Columbus, OH 43218-2422. A rejection notice is only effective if it is signed by you (all of you, if more than one) and if we receive it within thirty (30) calendar days after the date we first provide you with a credit card agreement or written notice providing you a right to reject this Arbitration Provision. Your rejection of this Arbitration

Your Rights and Our Responsibilities after We Receive Your Written Notice. We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including Finance Charges and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any Finance Charges related to any questioned amount. If we didn't make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you, and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50.00 of the questioned amount, even if your bill was correct.

Special Rule for Credit Card Purchases. If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

tive if it is signed by you (all of you, if more than one) and if we receive it within thirty (30) calendar days after the date we first provide you with a credit card agreement or written notice providing you a right to reject this Arbitration Provision. **Your rejection of this Arbitration Provision will not affect any other provision of this Agreement or your ability to obtain credit.**

**2. Parties Subject to Arbitration:** Solely as used in this Arbitration Provision (and not elsewhere in this Agreement), the terms "we," "us" and "our" mean (a) World Financial Network National Bank, any parent, subsidiary or affiliate of the Bank and the employees, officers and directors of such companies (the "Bank Parties"); and (b) any other person or company that provides any services in connection with this Agreement if you assert a Claim against such other person or company at the same time you assert a Claim against any Bank Party.

**3. Covered Claims:** "Claim" means any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program, any prior agreement or account. "Claim" includes disputes arising from actions or omissions prior to the date any Card was issued to you, including the advertising related to, application for or approval of the Account. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). It also includes disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Agreement. However, notwithstanding any language in this Arbitration Provision to the contrary, "Claim" does not include any dispute about the validity, effect or enforceability of the prohibitions against class proceedings, private attorney general proceedings and/or multiple-party proceedings described in Paragraph 30.C.7. (the "Class Action Waiver") or any dispute concerning the last sentence of Paragraph 30.C.13.; any such dispute shall be resolved by a court and not

quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

A. You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

B. The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**✱✱✱✱✱✱✱✱✱✱**

## WORLD FINANCIAL NETWORK NATIONAL BANK
## CUSTOMER PRIVACY STATEMENT

The following information applies to credit accounts you may have that are issued by World Financial Network National Bank.

At World Financial Network National Bank (referred to as "we" or "us") we are committed to providing you the finest products and the highest level of service. To accomplish this, we gather, use and share certain personal information. This Customer Privacy Statement describes the information we gather, with whom we share it and how and when you may direct us not to share certain information. We may disclose such information whether you are a current customer or former customer. We may share certain information, as described below, with other companies in our corporate family (our "Affiliates") such as all Alliance Data companies, all Epsilon companies and all other World Financial entities.

**1. Our Personal Information Collection Practices.**

"Class Action Waiver") or any dispute concerning the last sentence of Paragraph 30.C.13.; any such dispute shall be resolved by a court and not by an arbitrator or Administrator.

**4. Starting an Arbitration:**  Arbitration may be elected by any party with respect to any Claim, even if that party has already initiated a lawsuit with respect to a different Claim.  Arbitration is started by giving a written demand for arbitration to the other party.  We will not demand to arbitrate an individual Claim that you bring against us in small claims court or your state's equivalent court, if any.  But if that Claim is transferred, removed or appealed to a different court, we then have the right to demand arbitration.

**5. Choosing the Administrator:**  "Administrator" means the American Arbitration Association ("AAA"), 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org; JAMS is at 620 Eighth Avenue, 34th Floor, New York, NY 10018, www.jamsadr.org; or any other company selected by mutual agreement of the parties.  If both AAA and JAMS cannot or will not serve and the parties are unable to select an Administrator by mutual consent, the Administrator will be selected by a court.  The arbitrator will be appointed by the Administrator in accordance with the rules of the Administrator.  However, the arbitrator must be a retired or former judge or a lawyer with at least 10 years of experience.  You get to select the Administrator if you give us written notice of your selection with your notice that you are electing to arbitrate any Claim or within 20 days after we give you notice that we are electing to arbitrate any Claim (or, if you dispute our right to require arbitration of the Claim, within 20 days after that dispute is finally resolved).  If you do not select the Administrator on time, we may do it.  Notwithstanding any language in this Arbitration Provision to the contrary, no arbitration may be administered, without the consent of

**1. Our Personal Information Collection Practices.**
We collect information about you from the following sources:
- Information we receive from you in various ways, including credit applications, registration and other forms or from the Internet, such as address, telephone number, e-mail address, social security number and date of birth;
- Information about your transactions with us, our Affiliates, retailers or others, such as account balance, payment history and credit account usage;
- Information we receive from consumer reporting agencies (also known as credit bureaus), such as your credit score and credit history ("credit reports"); and
- Information we receive from our Affiliates and from third parties, such as household demographics.

**2. Our Personal Information Disclosure and Marketing Practices.**
We may disclose all of the information that we collect, as described in paragraph 1 above, subject to applicable law. We may disclose such information whether or not you are a current customer or former customer.

We may disclose information that identifies you, and information about your transactions and experiences with us, to our Affiliates. We also may disclose to our Affiliates credit information about you, including information from applications and credit reports ("credit information"), but disclosure of this credit information is subject to your right to opt out.

mal or informal policy that is inconsistent with the Class Action Waiver.

**6. Court and Jury Trials Prohibited; Other Limitations on Legal Rights:** IF YOU OR WE ELECT TO ARBITRATE A CLAIM, YOU WILL NOT HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM.  ALSO, YOUR ABILITY TO OBTAIN INFORMATION FROM US IS MORE LIMITED IN AN ARBITRATION THAN IN A LAWSUIT.  OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

**7. Prohibition Against Certain Proceedings:** IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION, EITHER AS A PLAINTIFF, DEFENDANT OR CLASS MEMBER; (2) NEITHER YOU NOR WE MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; (3) CLAIMS BROUGHT BY OR AGAINST YOU MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON; AND (4) THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION OR MULTIPLE-PARTY ARBITRATION.

**8. Location and Costs of Arbitration:**  Any arbitration hearing that you attend must take place at a location reasonably convenient to you.  We will pay any and all fees of the Administrator and/or the arbitrator if applicable law requires us to, if you prevail in the arbitration or if we must bear such fees in order for this Arbitration Provision to be enforced.  If you demand an arbitration, we will pay your reasonable attorneys' and experts' fees if you prevail or if we must bear such fees in order for this Arbitration Provision to be enforced.  Also, we will bear any fees if applicable law requires us to.

**9. Governing Law:**  This Arbitration Provision involves interstate commerce and is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), and not by any state arbitration law.  The arbitrator must apply applicable substantive law consistent with the FAA and applicable statutes of limitations and claims of privilege recognized at law.  The arbitrator may award any remedy provided by the substantive law that would apply if the

payment history and credit account usage from us and credit information about you, to send you marketing solicitations about their products and services, but this marketing use is subject to your right to opt out.

In addition, we may disclose information about you to nonaffiliated third parties, subject to your right to opt out of this disclosure, including:
• Financial service providers, such as insurance companies and others;
• Non-financial companies, such as retailers (other than the retailer(s) where you may make purchases using your credit account opened by us), direct marketers, publishers and others; and
• Others, such as non-profit organizations.

Even if you do decide to opt out of this third-party disclosure, we still may disclose all of the information about you we collect to nonaffiliated third parties as permitted by law, such as responding to government requests, and as described in paragraph 3.

**3. Disclosure to Service Providers or Joint Marketers.**
We may disclose all of the information about you we collect to companies that perform marketing or other services on our behalf or to other financial institutions with whom we have joint marketing agreements and to the retailer(s) where you may make purchases using your credit account opened by us.

**4. Your Choice to Limit Sharing and Marketing.**
You have choices to limit disclosures and the use of certain information as described in this Customer Privacy Statement. Specifically, you may choose to limit, or opt out of all of the following:
• Disclosure of credit information about you to our Affiliates; and
• Use of eligibility information about you, including your transactions and experiences with us, by our Affiliates to market their products and services to you; and
• Disclosure of nonpublic information about you to nonaffiliated third parties (other than as permitted by law or as described in paragraph 3).

applicable substantive law consistent with the FAA and applicable statutes of limitations and claims of privilege recognized at law. The arbitrator may award any remedy provided by the substantive law that would apply if the action were pending in court (including, without limitation, punitive damages, which shall be governed by the Constitutional standards employed by the courts). At the timely request of either party, the arbitrator must provide a brief written explanation of the basis for the award.

**10. Right to Discovery:** In addition to the parties' rights to obtain discovery pursuant to the arbitration rules of the Administrator, either party may submit a written request to the arbitrator to expand the scope of discovery normally allowable under the arbitration rules of the Administrator. The arbitrator shall have discretion to grant or deny that request.

**11. Arbitration Result and Right of Appeal:** Judgment upon the arbitrator's award may be entered by any court having jurisdiction. The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can, within 30 days after the entry of the award by the arbitrator, appeal the award to a three-arbitrator panel administered by the Administrator. The panel shall reconsider anew any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Provision to "the arbitrator" shall mean the panel if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with Paragraph 30.C.8. above.

12. Rules of Interpretation: This Arbitration Provision shall survive the

• Disclosure of nonpublic information about you to nonaffiliated third parties (other than as permitted by law or as described in paragraph 3).

If you wish to opt out of all of these disclosures, you may do so by calling us toll-free at 1-800-220-1181 (TDD/TTY 1-800-695-1788). If you have already opted out, you do not need to do so again, as once you have opted out your opt out will remain in effect until revoked by you in writing.

**5. Important Facts about Your Choices.**
• For joint accounts, an opt out made by one of the joint accountholders will apply to all of the joint accountholders on the same account.

• Please allow several weeks for your opt-out request to take effect.

• Your election to opt out will remain in effect until revoked by you in writing.

• We will continue to share nonpublic information about you with nonaffiliated third parties as permitted by law and as described in paragraph 3, including sharing your information with the retailer(s) where you may make purchases using your credit account opened by us. Our Affiliates also may continue to use information about you to market their products and services to you if they have an existing business relationship with you or where the use is otherwise permitted by law.

**6. Data Security Procedures.**
We restrict access to information about you to those persons who need to know that information in connection with providing products or services to you. We maintain physical, electronic and procedural safeguards to guard your information.

panel if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with Paragraph 30.C.8. above.

**12. Rules of Interpretation:** This Arbitration Provision shall survive the repayment of all amounts owed under this Agreement, the closing of the Account, any legal proceeding and any bankruptcy to the extent consistent with applicable bankruptcy law. In the event of a conflict or inconsistency between this Arbitration Provision, on the one hand, and the applicable arbitration rules or the other provisions of this Agreement, on the other hand, this Arbitration Provision shall govern. This Arbitration Provision replaces any Prior Arbitration Agreement.

**13. Severability:** If any portion of this Arbitration Provision, other than the Class Action Waiver, is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. If a determination is made that the Class Action Waiver is unenforceable, only this sentence of the Arbitration Agreement will remain in force and the remaining provisions shall be null and void, provided that the determination concerning the Class Action Waiver shall be subject to appeal.

**14. Special Payment:** If (1) you submit a Claim Notice in accordance with Paragraph 30.B on your own behalf (and not on behalf of any other party); (2) we refuse to provide you with the relief you request; and (3) an arbitrator subsequently determines that you were entitled to such relief (or greater relief), the arbitrator shall award you at least $5,100 (plus any fees and costs to which you are entitled).

**31. CUSTOMER SERVICE.** For customer service, you can call toll-free: 1-800-888-5529 (TDD/TTY 1-800-695-1788).

We restrict access to information about you to those persons who need to know that information in connection with providing products or services to you. We maintain physical, electronic and procedural safeguards to guard your information.

**7. Changes to this Statement.**
We may make changes to this Customer Privacy Statement at any time and will provide you with any notice of such changes as required by law. This Statement replaces any other statements or policies about our customer privacy and information practices.

**8. Compliance with State Laws.**
We also will comply with more restrictive state laws to the extent that they apply. For example, if your billing address is in Vermont or California, we will automatically treat you as though you opted out of all of the disclosures listed in Paragraph 4 above.

**9. Telephone Monitoring.**
As part of our continuing effort to maintain a high quality of service to our customers, telephone communications with you may be monitored and recorded. You agree that monitoring and/or recording may be done and that no additional notice to you or additional approval from you is needed. Please inform all persons authorized to use this account, those acting on your behalf, or anyone making payments on this account, of this provision.

**10. Effective Date.**
This Customer Privacy Statement is effective as of November 1, 2009 and until changed by the bank.

and costs to which you are entitled).

**31. CUSTOMER SERVICE.** For customer service, you can call toll-free: 1-800-888-5529 (TDD/TTY 1-800-695-1788).

**32. USING YOUR CREDIT CARD ACCOUNT.** Your Account may be used to make purchases from any of the following: Express and such other retailers as we may determine from time to time by notifying you via electronic mail, statement message, posting on a website or such other method as we may determine. We reserve the right not to honor particular transactions, which may include, without limitation, transactions related to gambling, ATM usage at casinos (if applicable through this program), and illegal activities.

**NOTICE(S):**

**FOR WISCONSIN RESIDENTS:**
If you are married, please contact us immediately upon receipt of this Agreement at 1-800-888-5529 (TDD/TTY 1-800-695-1788) and provide us with the name and address of your spouse. We are required to inform your spouse that we have opened a credit account for you.

**FOR BANKRUPTCY NOTIFICATIONS:**
All bankruptcy notices and related correspondence to WFNNB should be sent to the following address: WFNNB, Bankruptcy Department, PO Box 182125 Columbus, OH 43218-2125

**\*\*\*\*\*\*\*\*\*\***

provision.

**10. Effective Date.**
This Customer Privacy Statement is effective as of November 1, 2009 and until changed by the bank.

WORLD FINANCIAL NETWORK NATIONAL BANK
Columbus, Ohio

818121008 (10/09)

DOCUMENT 2

## EXHIBIT A

## BILL OF SALE

COMENITY BANK ("Seller"), for value received and pursuant to the terms and conditions of Credit Card Account Purchase Agreement dated December 24, 2013 between Seller and ("Purchaser"), its successors and assigns ("Credit Card Account Purchase Agreement"), hereby assigns effective as of the File Creation Date of December 25, 2013 all rights, title and interest of Seller in and to those certain receivables, judgments or evidences of debt described in Exhibit 1 attached hereto and made part hereof for all purposes.



| | |
|---|---|
| Number of Accounts | ▉ |
| Total Unpaid Balances | $▉ |
| Premium | ▉% |
| Due Seller | $▉ |

Amounts due to Seller by Purchaser in hereunder shall be paid U.S. Dollars by a wire transfer to be received by Seller on (the "Closing Date") December 27, 2013 by 5:00 p.m. Seller's time, as follows:

**COMENITY BANK**
**ABA #**▉
**Beneficiary Name:** COMENITY BANK
**Beneficiary Account: #**▉

This Bill of Sale is executed without recourse except as stated in the Credit Card Account Purchase Agreement to which this is an Exhibit. No other representation of or warranty of title or enforceability is expressed or implied.

**COMENITY BANK**

By: *John J. Coam*

Date: *December 27, 2013*

Title: *PRESIDENT*

**PORTFOLIO RECOVERY ASSOCIATES, LLC**

By: *Chris H*

Date: *1/15/2014*

Title *Authorized Signer*

| TRAN_DATE | ACCT_NO | DIV_NO | DIV_NAME | CYCLE_NUMBER | CREDIT_TERM_NUMBER |
|---|---|---|---|---|---|
| | 0000000000321179595 | 3 | Express | 30 | 4 |



PLAN_NUMBER   SURNAME   FIRST_NAME   MIDDLE_INITIAL   LAST_NAME   SUFFIX_CODE



| PLAN_NUMBER | SURNAME | FIRST_NAME | MIDDLE_INITIAL | LAST_NAME | SUFFIX_CODE |
|---|---|---|---|---|---|
| 1 | | JAMES | E | WOOD | |

JOINT_SURNAME    JOINT_FIRST_NAME    JOINT_MIDDLE_INITIAL    JOINT_LAST_NAME

| JOINT_SUFFIX_CODE | JOINT_SSN | EMPLOYER_NAME | STR_ADDR | SEC_STR_ADDR |
|---|---|---|---|---|



| | 000000000 | | 8616 JOLLY ROGER DR | |



| CITY | STATE | ZIP_CD | ZIP_PLUS4 | HOME_PHONE | BUSINESS_PHONE | PRIMARY_SSN |
|---|---|---|---|---|---|---|
| HUDSON | FL | 34667 | 4124 | 7278684406 | 7272378837 | 032607697 |



| OPEN_DATE | WRITE_OFF_DATE | LAST_PYMT_DATE | LAST_PYMT_AMT | LAST_PURCHASE_DATE |
|-----------|----------------|----------------|---------------|--------------------|
| 9/22/2007 | 4/10/2010 | 9/5/2009 | 35 | 10/22/2009 |

LAST_PURCHASE_AMOUNT    CUSTOMER_DATE_OF_BIRTH    WRITE_OFF_AMT    CURRENT_BALANCE



| LAST_PURCHASE_AMOUNT | CUSTOMER_DATE_OF_BIRTH | WRITE_OFF_AMT | CURRENT_BALANCE |
|---|---|---|---|
| 50 | 6/27/1970 | 997.71 | 997.71 |

FIRST_DELQ_DATE    PRINCIPAL_BALANCE    UNPAID_FINANCE_CHARGES    UNPAID_LATE_FEES



10/11/2009          721.56                126.15                    150

UNPAID_MISCELLANEOUS_FEES    SERIES_NUMBER    CURRENT_AGENCY_NUMBER    STATUS_CODE_1



STATUS_CODE_1_DATE    STATUS_CODE_2    STATUS_CODE_2_DATE    STATUS_CODE_3

STATUS_CODE_3_DATE    SOA_TP_TYPE    SOA_TP_SUR_TITLE_CD    SOA_TP_FIRST_NAME

SOA_TP_MIDDLE_INIT    OA_TP_LAST_NAME    SOA_TP_SUFFIX    SOA_TP_ADDR_LINE_1

| SOA_TP_ADDR_LINE_2 | SOA_TP_CITY | SOA_TP_STATE | SOA_TP_ZIP_CODE | SOA_TP_ZIP_CODE_PLUS4 |
|---|---|---|---|---|
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |
| | | | 00000 | 0 |

| SOA_TP_HOME_PHONE_NO | SOA_TP_WORK_PHONE_NO |
| --- | --- |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |
| 0 | 0 |